IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NATAUSHA K. JOHNSON,     §
§
      Plaintiff,    §
§   Civil Action No. 3:12-CV-1461-D
VS.     §
§
DALLAS COUNTY SOUTHWESTERN §
INSTITUTE OF FORENSIC SCIENCE §
& MEDICAL EXAMINER §
DEPARTMENT, §
§
      Defendant. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Natausha K. Johnson ("Johnson") alleges that her former employer,
defendant Dallas County, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000e *et seq.*, by discriminating against her based on pregnancy and retaliating
against her for engaging in protected conduct. Dallas County moves for summary judgment,
presenting the question whether a reasonable jury could find in Johnson's favor on either
claim. Concluding that it could not, the court grants the motion and dismisses this action by
judgment filed today.

I

Johnson began her employment as a medicolegal death investigator for Dallas County
in August 2006.[1] In July 2009 she requested and was granted leave under the Family and

---

[1]The court recounts the evidence in favor of Johnson as the summary judgment
nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-*

Medical Leave Act ("FMLA")[2] due to a high risk pregnancy.  After her pregnancy ended in a stillbirth in August 2009, she took FMLA leave, returning to work on September 11, 2009.

On Johnson's return to work, her coworkers voluntarily handled the investigations of deaths involving babies because they knew Johnson was still grieving from the stillbirth. When Johnson's supervisor Mary Brownlee ("Brownlee") learned of this, she informed Johnson that she did not think it was appropriate or professional for coworkers to handle the investigations of baby deaths.[3]

In November 2009 Johnson learned that she was pregnant again, with an expected due date of June 2010.  She was hesitant to inform Brownlee of her pregnancy because she felt Brownlee had not been sympathetic or understanding following her August 2009 stillbirth. Nonetheless, in January 2010 Johnson informed Brownlee that she was pregnant. Brownlee's first comment in response was, "Natausha Why."  P. Br. 7.  During the same conversation, Johnson inquired about light duty work, and Brownlee told her there was no light duty available for her position.  According to Brownlee, "[Johnson's] position was all or nothing."  *Id.*  But two other employees, Cathy Garvin ("Garvin") and Glynda Ray

---

*Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*

[3]Dallas County objects to various statements in Johnson's affidavit, arguing that they lack foundation or are hearsay.  Johnson objects to page 18 of Dallas County's appendix. Given the grounds on which the court is deciding Dallas County's motion, the court overrules the objections as moot.

("Ray"), were permitted to work light duty, and Dallas County created a modified light duty position to accommodate Ray's restrictions as a result of undergoing knee surgery.

Johnson alleges that her coworkers helped her during her pregnancy with the bending, reaching, and climbing required of her while conducting investigations in the field. Brownlee told Johnson that she did not approve of the other detectives helping Johnson perform some of the physical responsibilities of her job because of her pregnancy.

Brownlee issued Johnson a Job Attendance Policy Compliance Review Form ("Compliance Review") on March 23, 2010, citing the fact that Johnson had taken six unscheduled absences. The Compliance Review stated that "[o]ther employees must perform tasks during absences" and "[o]ffice productivity and service quality is negatively impacted by absences." *Id.* at 9. The Compliance Review also stated: "[u]nscheduled time off equals 50.9 hours as of 03-23-10. This does not include other time off which was considered excused. Excessive absences [a]ffect[] the operations of this office and decrease[] the ability for our staff to serve the public in the way they deserve." P. App. 11 (alterations added). That same day, Dallas County posted a medicolegal death investigator position. In response to the Compliance Review, Johnson stated that the reasons for her absences were her pregnancy and a case of the flu. Johnson provided doctor notes for her January 6, January 22, February 22, and March 11 absences.

On April 9, 2010 Johnson's physician recommended that she remain off work from April 9, 2010 until six weeks post partum. Four days later, Johnson applied for and was granted FMLA leave through May 10, 2010, the date when her FMLA leave was exhausted

- 3 -

for the calendar year.  Brownlee told Johnson that, if she required additional leave, she would have to request a leave of absence from Dr. Jeffery Barnard ("Dr. Barnard"), the Director and Chief Medical Examiner for Dallas County.  Johnson did so, attempting to hand deliver to Dr. Barnard a letter requesting a leave of absence.  Dr. Barnard refused to accept the letter, informing Johnson that she would need to talk to Brownlee or to Human Resources Representative Cathy Self ("Self") about requesting leave.  After this conversation, Johnson contacted the Human Resources Department and spoke with Carmen Brown ("Brown"), who informed Johnson that she could access and print the leave of absence request paperwork from the Dallas County website and that she needed to complete the form and return it to her immediate supervisor.  Johnson followed these instructions, printing the paperwork, completing it, and placing it in Brownlee's mailbox.

On April 21, 2010 Johnson sent an email to Brownlee informing her that her physician had recommended that she not return to work until six weeks following her delivery.  On May 10, 2010 Johnson sent an email to Brownlee inquiring about the status of her leave of absence request.  The next day, Johnson telephoned Brownlee, and, during this conversation, Brownlee informed Johnson that Self was still working on the leave of absence paper work.  Two days later, Johnson received from Dallas County a termination letter, dated May 11, 2010, that stated:

> when an employee is unable to return to work after the end of FMLA and is not granted a Leave of Absence, any continued absences from work shall be counted as excessive and the employee is subject to termination . . . .  It is with regret that I inform you that I am unable to grant you a Leave of Absence

> due to business necessity and critical staffing needs in our
> Medicolegal Death Investigation office.  Therefore, effective
> May 13, 2010, your employment with the Dallas County
> Institute of Forensic Sciences will end . . . .  I encourage you to
> reapply for a position with us when you are available to return
> to work.

D. App. 12.  According to Johnson, Brownlee and Self informed her that, when she was

ready to return to work, she could reapply if her position had not been filled.  The position

was filled, however, by Elza M. Davis ("Davis"), although Davis did not begin her

employment with Dallas County until after Johnson would have returned to work.  At the

time of her termination, Johnson was the second most tenured agent in the office and had

never been disciplined prior to her pregnancies.

Johnson filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC"), alleging sex discrimination and retaliation.  After receiving a right

to sue letter from the EEOC, Johnson filed suit against Dallas County asserting claims for

sex discrimination and retaliation, in violation of Title VII.[4]  Dallas County moves for

summary judgment, seeking dismissal of all claims.  Johnson opposes the motion.

---

[4]In her amended complaint, Johnson alleges three grounds for her discrimination
claim.  In addition to claims of improper termination and retaliation, she asserts that Dallas
County "discriminat[ed] against [her] in the terms, conditions and privileges of employment
[.]" Am. Compl. ¶ 7.  In her summary judgment response brief, however, it is apparent that
Johnson's discrimination claim is based on her termination and on alleged retaliation.  *See*
P. Br. 18-22 & 22-24.

II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citation omitted). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to Johnson's discrimination claim, which is based on her termination.

A

Title VII prohibits intentional discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Discrimination on the basis of sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id*. § 2000e(k).[5]

Because Johnson relies on circumstantial evidence to support her discrimination claim, it is properly analyzed under the *McDonnell Douglas* burden shifting framework. *See, e.g.*, *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011) (applying *McDonnell Douglas* burden-shifting framework to Title VII pregnancy discrimination claim). As modified, the *McDonnell Douglas* framework consists of three stages. First, Johnson must establish a prima facie case of discrimination, which "creates a presumption that [Dallas County] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination based on pregnancy under Title VII, Johnson must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999) (Title VII sex discrimination case).

Second, if Johnson establishes a prima facie case, the burden shifts to Dallas County to articulate a legitimate, nondiscriminatory reason for the employment actions taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Dallas County's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*,

---

[5]Although Johnson alleges in her amended complaint a claim for discrimination "because of her sex (Female)," she limits the argument in her summary judgment brief to the claim that she was discriminated against on the basis of her pregnancy.

*West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Dallas County meets its production burden, Johnson must show that the legitimate reasons proffered by Dallas County "were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Therefore, to survive summary judgment, Johnson must "offer sufficient evidence to create a genuine issue of material fact . . . that [Dallas County's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted) (describing standard in context of age discrimination case).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

To the extent Johnson bases her pregnancy discrimination claim on her May 13, 2010 termination, Johnson can establish a prima facie case of discrimination. Dallas County does not dispute that Johnson can establish the first three prongs of a prima facie case, and Johnson's evidence that she was replaced by Davis, a non-pregnant employee, is sufficient to satisfy the fourth prong.

- 8 -

C

Dallas County has produced evidence of a legitimate, nondiscriminatory reason for terminating Johnson's employment.  According to its proof, it terminated Johnson because she exhausted all the FMLA leave to which she was entitled, and, when she did not return to work at the end of the leave period, her employment was terminated.

D

Under the *McDonnell Douglas* burden-shifting framework, once the employer has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show "by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation."  *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted).  Johnson "may prove pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"  *Id*. (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).   At the summary judgment stage, Johnson's burden is to raise a genuine issue of material fact regarding pretext.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because FedEx has satisfied its burden to produce a legitimate, nondiscriminatory reason for Jackson's discharge, in order for Jackson to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.").

Johnson appears to rely on a theory of disparate treatment to prove pretext.  To create a genuine issue of material fact on the issue of pretext, Johnson must adduce evidence that would permit a reasonable jury to find that Dallas County gave "preferential treatment to another employee under 'nearly identical' circumstances."  *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).  "In discrimination cases, [the court] compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) (quoting *Okoye*, 245 F.3d at 514).  The circumstances are not "nearly identical" when the difference between the plaintiff's circumstances and the circumstances of those alleged to be similarly situated accounts for the difference in treatment received from the employer.  *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).  "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'"  *Dotson v. Gulf*, 2006 WL 44071, at *7 (S.D. Tex. 2 Jan. 9, 2006) (citing *Okoye*, 245 F.3d at 514-15).

Johnson has failed to produce any evidence from which a reasonable jury could find that Dallas County gave preferential treatment to another employee under nearly identical circumstances.  In support of her position, she avers that "Cathy Garvin was granted a leave of absence based upon her medical issues although she had exhausted her FMLA leave," and

"[e]xcessive absences and tardiness by Loan Tran [("Tran")] and Jennifer Hernandez [("Hernandez")], both medicolegal death investigator[s], was tolerated and not documented by Brownlee." P. App. 6. Other than the quoted statements, Johnson provides no specific facts regarding these employees (or supporting evidence). If this were the extent of Johnson's evidence offered at trial, a reasonable jury could not find that the named individuals were given preferential treatment under "nearly identical" circumstances. Johnson does not provide any details or evidence regarding what these other employees' job responsibilities were, who their supervisors were, or whether they had the same or different capabilities. Regarding Garvin, Johnson does not provide any facts relating to her request for a leave of absence, such as the timing of the request, the reason for the request, and who approved the request. And as to Tran and Hernandez, she provides no details regarding how often these employees were absent or tardy. Because she does not cite evidence of disparate treatment in nearly identical circumstances, Johnson has failed to create a genuine issue of fact on the issue of pretext. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 654 (N.D. Tex. 2010) (Fitzwater, C.J.).

Johnson next attempts to establish pretext based on evidence that she maintains shows Brownlee's "[o]ral statement[s] exhibiting discriminatory animus." P. Br. 21. She maintains that, when she told Brownlee that she was pregnant, Brownlee's "very first comment . . . was 'Nataushua Why?' . . . [when m]ost non retributive persons would have congratulated Johnson and her husband." *Id.* Johnson also relies on Brownlee's comment that it was not "appropriate or professional" for Johnson's coworkers to handle the investigations of babies

after Johnson's 2009 stillbirth as evidence of "a threat/intimidation tactic" and "antagonism to pregnancy." *Id.* at 22.[6]  To the extent Johnson intends to rely on these comments as circumstantial evidence of pretext, this court has explained that "'[s]tray remarks are insufficient to enable a claim to survive summary judgment when a plaintiff fails to produce substantial evidence of pretext.'" *Conaty v. Brocade Commc'n Sys., Inc.*, 2009 WL 937044, at *11 (N.D. Tex. Apr. 7, 2009) (Fitzwater, C.J.) (quoting *Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.)).  Because Brownlee's remarks do not relate to the decision to terminate Johnson and are unaccompanied by substantial evidence of pretext, they are insufficient to rebut Dallas County's legitimate, nondiscriminatory reason for terminating Johnson's employment.

Finally, Johnson argues that, on the very same day she was disciplined for excessive absences, Dallas County posted a medicolegal death investigator position, and she asserts that "[t]he timing of this posting is suspect to say the least." P. Br. 21.  Johnson posits that "on the very same day [she] was disciplined for excessive absences, Dallas County posted a medicolegal death investigator position." *Id.*  She maintains that "[a] jury could easily infer

_____

[6]Johnson does not argue that either statement constitutes direct evidence of discrimination.  As this court has explained, "[t]o constitute direct evidence [of discrimination], . . . a remark 'must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue.'" *Conaty v. Brocade Commc'n Sys., Inc.*, 2009 WL 937044, at *4 (N.D. Tex. Apr. 7, 2009) (Fitzwater, C.J.) (quoting *Reilly v. TXU Corp.*, 271 Fed. Appx. 375, 379 (5th Cir. 2008)).  Because neither comment related to Dallas County's decision to terminate Johnson's employment, they are not direct evidence of discrimination.

that the decision to terminate [her] had been made as soon as she notified Brownlee of the pregnancy." *Id.* The court disagrees. Johnson notified Brownlee of her pregnancy in January 2010, two months before Johnson was disciplined. A reasonable jury could not find, based on Dallas County's posting of a medicolegal death investigator position on March 23, 2010 (the day that Johnson was issued a Compliance Review for excessive absences) that Dallas County's proffered reason for its May 13, 2010 termination of Johnson's employment was a pretext for pregnancy discrimination.

Under the *McDonnell Douglas* burden-shifting framework, "[t]he ultimate question is whether the employer intentionally discriminated." *Reeves*, 530 U.S. at 146. "In other words, '[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id*. at 147 (alterations in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Here, Johnson has offered no evidence from which a reasonable jury could find that Dallas County terminated her employment as a result of intentional discrimination on the basis of her pregnancy. Accordingly, the court grants Dallas County's motion for summary judgment on Johnson's claim for discrimination in the termination of her employment.

## IV

The court now considers Johnson's retaliation claim, which is also based on her termination.

## A

Because Johnson relies on circumstantial evidence, it is proper to analyze her

retaliation claims under the same *McDonnell Douglas* burden shifting framework explained above. *See Tesso v. Westwood Coll.*, 2012 WL 3204916, at *8 (N.D. Tex. Aug. 8, 2012) (Fitzwater, C.J.). She must demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g.*, *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Johnson establishes a prima facie case, the burden shifts to Dallas County to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp*., 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Dallas County meets its production burden, Johnson must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the

employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4.

B

Johnson alleges that Dallas County retaliated against her for informing Brownlee of her pregnancy, requesting FMLA leave, and requesting a leave of absence as a result of her pregnancy.

The court will assume, *arguendo*, that Johnson has established a prima facie case of retaliation based on her May 13, 2010 termination. Dallas County has produced evidence that it had a legitimate, nondiscriminatory reason for terminating Johnson's employment: because she exhausted her FMLA leave and failed to return to work on May 11, 2010, after her FMLA leave was exhausted.

Because Dallas County has met its burden of production, Johnson must adduce sufficient evidence that the proffered reason is a pretext for retaliation.[7]   Ultimately, she

---

[7]Johnson makes no attempt to show that Dallas County acted with mixed motives. The court therefore considers her arguments only under the pretext alternative. *See, e.g.*, *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (holding that court would consider plaintiff's discrimination claim only

- 15 -

"must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  For the reasons explained above, Johnson has failed to produce evidence that would enable a reasonable jury to find that Dallas County's proffered reason for terminating Johnson's employment is pretextual.  Accordingly, the court grants Dallas County's motion for summary judgment dismissing Johnson's Title VII retaliation claim.

*     *     *

For the foregoing reasons, the court grants Dallas County's motion for summary judgment and dismisses this action by judgment filed today.

**SO ORDERED.**

January 16, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

under pretext alternative because plaintiff contended that defendant's stated justification for discharge was untrue and did not clearly contend that defendant had mixed motives), *aff'd sub nom.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012).